UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA E. ROSARIO, | ) | CIVIL ACTION NO. 1:19-CV-1004 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| ANDREW SAUL,[1] | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

## I.   INTRODUCTION

Plaintiff Maria E. Rosario, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 14). After

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).  *See also* Section 205(g) of the Social Security Act, 42 U.S.C. §405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).  The caption in this case is amended to reflect this change.

reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision is VACATED, and this case is REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

II.     BACKGROUND & PROCEDURAL HISTORY

On July 22, 2016, Plaintiff filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 15; Doc. 11-2, p. 16).  In these applications, Plaintiff alleged she became disabled as of March 12, 2015, when she was thirty-eight years old, due to the following conditions: depression with anxiety; hypothyroidism; non-proliferative diabetic retinopathy; insulin pump titration; abdominal pain; type 1 diabetes mellitus; hypoglycemia; migraines; and adjustment disorder with depressed mood. (Admin. Tr. 197; Doc. 11-6, p. 3). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand reach, walk, sit, kneel, climb stairs, see, remember, and concentrate. (Admin. Tr. 214; Doc. 11-6, p. 20). Plaintiff has at least a high school education. (Admin. Tr. 26; Doc. 11-2, p. 27).

Before the onset of her impairments, Plaintiff worked as a mail order clerk, hotel clerk, cashier, and school bus driver. *Id*.

On September 2, 2016, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 11-2, p. 16). On October 25, 2016, Plaintiff requested an administrative hearing. *Id*.

On March 15, 2018, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Jarrod Tranguch (the "ALJ"). *Id*. On August 14, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. *Id*. On August 22, 2018, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 175; Doc. 11-4, p. 37).

On May 16, 2019, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 11-2, p. 2).

On June 13, 2019, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1 ¶ 5). As relief, Plaintiff requests that the Court reverse the Commissioner's decision, or in the alternative remand this case for further proceedings. (Doc. 1).

On September 4, 2019, the Commissioner filed an Answer. (Doc. 10). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 10 ¶ 8). Along with his Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 13), the Commissioner's Brief (Doc. 15), and Plaintiff's Reply (Doc. 16) have been filed.  This matter is now ripe for decision.

## III.   STANDARDS OF REVIEW

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but

more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope

of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

      B.     STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on August 14, 2018.

age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 2 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

## IV.   DISCUSSION

Plaintiff raises the following arguments in her statement of errors:

1. The ALJ's rejection of moderate limitations in social interaction within Dr. Galdieri's opinion is not supported by substantial evidence as it ostensibly rejects all medical opinions of record in violation of *Doak v. Heckler*; the ALJ erroneously substituted his opinion for that of a medical one.

2. The ALJ's rejection of relevant portions of Dr. Stroka's opinion is not supported by substantial evidence.

   a. The ALJ's medical opinion analysis is unreviewable; the ALJ fails to identify any medical evidence conflicting with the treating physician's uncontroverted opinion.

   b. The ALJ's residual functional capacity assessment cannot be supported by substantial evidence as it ostensibly rejects all medical opinions of record in violation of *Doak v. Heckler*; the ALJ substituted his opinion for that of a medical one.

   c. The ALJ erroneously rejects portions of Dr. Stroka's opinion based solely upon the fact that she is not a mental health specialist.

   d. The ALJ erroneously rejects portions of Dr. Stroka's opinion based upon the unsupported assumption that Dr. Stroka relied upon Plaintiff's self-reported symptoms rather than her own medical opinion.

(Doc. 13, pp. 7-8).

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his August 2018 decision, the ALJ found that Plaintiff met the insured

status requirement of Title II of the Social Security Act through June 30, 2020.

(Admin. Tr. 17; Doc. 11-2, p. 18). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 17, 2016 (Plaintiff's alleged onset date) and August 14, 2018 (the date the ALJ decision was issued) ("the relevant period"). *Id.* At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: major depressive disorder; type I diabetes; bilateral shoulder impingement; carpal tunnel syndrome of the right wrist; and left ulnar neuropathy. (Admin. Tr. 18; Doc. 11-2, p. 19). Also at step two, the ALJ found that Plaintiff had the following medically determinable non-severe impairments: migraines and diabetic retinopathy. *Id.* At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a) except that:

> The claimant would be limited to occasional use of the upper
> extremities for pushing and pulling, such as for operating levers or hand

controls. She would be limited to occasional balancing, stooping, crouching, use of ramps and climbing on stairs, but would need to avoid crawling and climbing on ladders, ropes, or scaffolds. She would need to avoid reaching behind or rear reaching, and would be limited to occasional overhead reaching. The claimant would need to avoid occupations that require driving as part of the occupation. She should avoid concentrated exposure to vibrations, and should avoid workplace hazards, such as unprotected heights and dangerous moving machinery. The claimant could perform jobs that are low stress, that involve only occasional simple decision making and require only occasional changes in the work duties or work setting.

(Admin. Tr. 20-21; Doc. 11-2, pp. 21-22).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 26; Doc. 11-2, p. 27). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 26; Doc. 11-2, p. 27). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Order Clerk, DOT #209.567-014; Information Clerk, DOT #237.367-046; Inspector, DOT #669.687-014. (Admin. Tr. 27; Doc. 11-2, p. 28).

B.   WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION EVIDENCE OF RECORD

On March 1, 2017, treating source Christine M. Stroka ("Dr. Stroka") completed a check-box/fill in the blank medical source statement about Plaintiff's

physical abilities and limitations. (Admin. Tr. 843-848; Doc. 11-15, pp. 48-53). Dr. Stroka reported that she examines Plaintiff every three months, and that Plaintiff's current diagnoses include: "DM Type I—fragile; hypothyroidism; anxiety; depression; and migraines." *Id.* Dr. Stroka reported that Plaintiff was not in any significant pain, and could: sit for up to forty-five minutes at a time, and for a total of up to six hours per eight-hour workday; stand for up to forty-five minutes at a time and for up to six hours per eight-hour workday; walk for up to six hours per eight-hour workday; frequently lift up to twenty pounds; occasionally lift up to fifty pounds; and occasionally twist, stoop, crouch/squat, climb stairs, and climb ladders. *Id.* Despite her wide range of physical ability, Dr. Stroka opined that Plaintiff would need one twenty-minute break every two hours due to low blood sugars, would be off task 25% or more of each workday due to depression and fluctuating glucose levels, and would be absent from work more than four days per month due to migraines and low glucose. *Id.*

In his decision, the ALJ gave "partial" weight to Dr. Stroka's opinion. In doing so, the ALJ explained:

> Dr. Stroka completed a medical source statement in March 2017, in which she opined that the claimant could sit for forty-five minutes and stand for forty-five minutes at one time, and could sit, and stand and walk for at least six total hours in an eight-hour workday (Exhibit C1F/4). She further opined that the claimant would require unscheduled breaks approximately every two to four hours, that would last about

twenty minutes each (Exhibit C11F/4). Dr. Stroka also noted that the claimant could frequently lift and carry up to 10 pounds and could occasionally lift nd carry up to 50 pounds (Exhibt C11F/5). She noted that the claimant could occasionally twist, stoop, crouch, squat, and climb ladders and stairs (Exhibit C11F/5). She also noted that the claimant would have unlimited use of her upper extremities (C11F/5). Dr. Stroka also opined that the claimant would be off task 25% or more of the workday (Exhibit C11F/5). She noted that the claimant would be capable of low stress work, but would likely be absent more than four days per month (Exhibit C11F/6). The undersigned gives this opinion partial weight. The undersigned agrees with this opinion to the extent it reflects that the claimant is capable of performing less than the full range of sedentary exertional work, as noted above, and finds that these portions of Dr. Stroka's opinion are consistent with the overall medical evidence, including findings from objective physical examinations, as explained in more detail above. However, the undersigned notes that Dr. Stroka's opinion is otherwise not well supported by the evidence, and appears to be based largely on the claimant's self-reported symptoms and limitations. Additionally, Dr. Stroka bases her opinion partially on the claimant's depression; however, Dr. Stroka is not a mental health specialist. In consideration of the evidence of record, the undersigned finds that the claimant is subject to less significant limitations than determined by this source.

(Admin. Tr. 24-25; Doc. 11-2, pp. 25-26).

Plaintiff argues:

While the ALJ generally concludes that Dr. Stroka's opinion is inconsistent with the evidence of record, the ALJ does not specify *which records* are inconsistent. (Tr. 25). Thus, this case presents a question that was also present in *Batdorf v. Colvin*, whether an ALJ's conclusory statement that evidence is inconsistent with an opinion is sufficient to reject that opinion. *Batdorf v. Colvin*, Civ. A. No. 3:16-CV-409 at *27, 2016 U.S. Dist. LEXIS 114374 (M.D. Pa. Aug. 26, 2016) (Conaboy, J.) (citing *Gross v. Comm'r of Soc. Sec.*, No. 15-2764, Fed. App'x , 2016 U.S. App. LEXIS 12042, 2016 WL 3553259, at *5 (3d Cir. June 30, 3016)).

Page 13 of 25

Citing the Third Circuit's decision in *Gross*, the Court held that an ALJ must do more than acknowledge such inconsistent evidence—he must identify conflicting records with specificity and provide reasons for crediting certain objective clinical findings over others. *Batdorf*, Civ. A. No. 3:16-CV-409 at *27.

This duty steps from the ALJ's duty to adequately explain the evidence that he rejects or to which he affords lesser weight. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009) (holding that because the ALJ did not provide an adequate explanation for the weight he gave to several medical opinions, remand was warranted). The ALJ's explanation must be sufficient enough to permit the court to conduct meaningful review. *Id.*

Indeed, the ALJ's rejection of the relevant portions of Dr. Stroka's opinion falls short of this requirement. The ALJ's rejection of this opinion cannot be supported by substantial evidence as he failed to identify any conflicting medical evidence. (Tr. 25).

Plaintiff is aware that in response to this argument, the Commissioner ordinarily argues that the ALJ decision sufficiently identifies conflicting evidence. In doing so, the Commissioner ordinarily argues that the ALJ's general recitation of medical evidence is sufficient; however, *Gross* and *Batdorf* establish that a mere recitation of evidence is not sufficient. An ALJ must clearly identify which evidence he believes to conflict with a medical opinion so a reviewing court may determine if the evidence actually conflicts or whether the ALJ merely believes the evidence to conflict with the opinion. Here the ALJ did not clearly identify any evidence he believed to conflict with Dr. Stroka's opinion.

Thus, it is entirely unclear how the ALJ arrived at the conclusion that Dr. Stroka's opinion regarding unscheduled work breaks, time off task, and unscheduled absences is inconsistent with the record. Dr. Stroka specifically notes that the limitation is due to fluctuating glucose stemming from diabetes. (Tr. 845-847).

There is no question that Ms. Rosario suffers from diabetes as the ALJ accepted the diabetes as a severe impairment. (Tr. 18). The existence of diabetes (and the resultant fluctuation of glucose) explains and supports the opinion of Dr. Stroka. Which begs the question, which specific records does the ALJ believe conflict with this opinion? Without a thorough explanation, there is simply no way for Plaintiff or for the reviewing Court to determine which records the ALJ believed to conflict with these opinions or whether those records do in fact conflict with the opinions. As such, the rejection of the opinion is unreviewable and remand is required. *Batdorf*, Civ. A. No. 3:16-CV-409 at *27.

(Doc. 13, pp. 14-16).

In response, the Commissioner argues:

Plaintiff contends that the ALJ erred by not adopting primary care physician Dr. Stroka's opinion that she would require unscheduled breaks every two to four hours, be off-task 25% or more due to depression and glucose issues, and would be absent more than four days every month due to migraines and low glucose in the RFC (Pl.'s Br. at 12-14; Tr. 845-47). But after "consideration of all the evidence of record," the ALJ found that Plaintiff "is subject to less significant limitations than determined by this source" and afforded Dr. Stroka only partial weight (Tr. 25). More than a mere scintilla of evidence supports this finding.

The ALJ explained that Dr. Stroka's opinion was not well-supported by the evidence (Tr. 25). This is accurate as Dr. Stroka saw Plaintiff only twice during the entirety of the relevant period. The record contains two treatment notes from Geisinger Family Practice Mount Pleasant: June 29, 2016, and July 13, 2016 (Tr. 268-73, 273-78). The ALJ discussed these examinations (Tr. 22), which did not document any attention, concentration, migraines, or glucose fluctuations that would support the above limitations (Tr. 268-278). The record otherwise does not reflect any treatment with Dr. Stroka or her practice during the rest of the relevant period. And as the ALJ elsewhere discussed, the record showed normal memory, attention, and concentration (Tr. 24, citing Tr. 718-19, 865-66, 870-71, 875). Plaintiff's demonstrated activities also

contradict these limitations: she successfully graduated cosmetology school in December 2016 (Tr. 43-44, 274, 712, 716), styled hair for friends and family (Tr. 17, 44), planned to start an online store selling candles (Tr. 716), ran commission-based parties (Tr. 45), worked in 2016 and 2017, (Tr. 51, 919, 1076), and thereafter began work as a telemarketer earning substantial gainful activity in February 2018 (Tr. 18-47-48). Plaintiff was able to perform these activities notwithstanding the noted non-compliance with her diabetic monitoring (Tr. 23).

(Doc. 15, pp. 13-15) (footnote omitted).

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b); 20 C.F.R. § 416.927(b).

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). Under some circumstances, the medical opinion of a "treating source" may even be entitled to controlling weight. 20 C.F.R. § 404.1527(a)(2) (defining treating source); 20 C.F.R. § 416.927(a)(2) (same as 20 C.F.R. § 404.1527(a)(2)); 20 C.F.R. §

404.1527(c)(2) (explaining what is required for a source's opinion to be controlling); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. §404.1527(c)(2)).

Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c); 20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. This principle applies with particular force to the opinion of a treating physician. *See* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."); 20 C.F.R. § 416.927(c)(2) (same as 20 C.F.R. § 404.1527(c)(2)). "Where a conflict in the evidence exists, the ALJ

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

At the outset, I note that in her argument Plaintiff appears to conflate the issues of "consistency" and "supportability." Plaintiff argues "the ALJ generally concludes that Dr. Stroka's opinion is inconsistent with the evidence of record, the ALJ does not specify *which records* are inconsistent." However, the ALJ does not cite a lack of consistency as a basis to Dr. Stroka's assessment that Plaintiff would need one twenty-minute break every two hours due to low blood sugars, would be off task 25% or more of each workday due to depression and fluctuating glucose levels, and would be absent from work more than four days per month due to migraines and low glucose. Instead, the ALJ says that these limitations are not "supported." (Admin. Tr. 25; Doc. 11-2, p. 26) ("Dr. Stroka's opinion is otherwise not well supported by the evidence . . . ."). Therefore, I will construe Plaintiff's argument as contesting the ALJ's assessment that these limitations were "not supported" by the record.

The ALJ's evaluation of Dr. Stroka's opinion is preceded by the following summary of Plaintiff's medical records:

> . . . . The nature and scope of the claimant's treatment history is also not supportive of a finding that she would be precluded from sustaining a range of sedentary exertion. The record indicates that the claimant has a very long history of diabetes mellitus, dating back to childhood

(Exhibit C7F). The record also notes that the claimant has struggled to control her diabetes, but currently uses both an insulin pump and monitor system to help regulate her blood sugar (Exhibit C7F). Treatment notes from June 2016 indicate that the claimant walk with a normal gait (Exhibit C2F/7 and 12). There was not edema or joint deformity noted on examination of the claimant's extremities (Exhibit C2F/7 and 12). She had bilateral shoulder pain and decreased range of motion (Exhibit C2F/7 and 12). There was also crepitus noted over the claimant's right knee, and patellar grind test was positive (Exhibit C2F/7 and 12). At one appointment, there was tenderness noted along the trapezius and at the muscle insertion of the claimant['s] shoulder, arms, knees, and hips (Exhibit C2F/7). A July 2016 x-ray of the left knee was normal (Exhibit C2F/232-33). At this time, the record indicates that the claimant had better motion in her shoulders, but continued to experience pain at the extremes of motion and with shoulder abduction (Exhibit C3F/22). There were mild Tinel's signs over the median nerve of the right wrist (Exhibit C3F/22). Carpal compression test was equivocal, sensation was intact, and the claimant had excellent movement of her fingers (Exhibit C3F/22). At another appointment from this time, the claimant walked with a normal gait and examination of her abdomen was normal (Exhibit C15F/20). There were no focal motor or sensory deficits noted, and there was no edema in the claimant's extremities (Exhibit C15F/20). At an August 2016 eye examination, the record notes that the claimant has diabetic retinopathy, described as mild, but no macular edema (Exhibit C4F/87).

In September 2016, the claimant presented to the emergency room with an altered mental state and confusion (Exhibit C7F/11). At this time, the claimant was diagnosed with diabetic ketoacidosis (Exhibit C7F/11). She explained that she had forgotten to fill her insulin pump due to family stress (Exhibit C7F/33). Physical examination upon intake indicates that the claimant was confused, and had an abnormal thought process, but was able to repeat sentences that were said to her (Exhibit C7F/12). A CT of the brain was normal (Exhibit C7F/34). A chest x-ray showed mild bibasilar atelectasis (Exhibit C7F/34-35). An abdominal ultrasound revealed multiple filling defects within the gallbladder likely on the basis of polyps and/or sludge balls, suggestion of a small stone near the gallbladder neck, but no gallbladder wall

thickening or ductal dilatation (Exhibit C7F/35-36). Other examinations from this time indicates that the claimant retained normal range of motion in her upper and lower extremities, and motor strength and sensation were grossly intact (Exhibit C7F/22 and 28). The claimant had an altered neurological state, but no obvious focal deficits (Exhibit C7F/22). A consultation from this time indicates that the claimant answered questions slowly, but correctly (Exhibit C7F/31-21). She was able to move all four limbs, and had no edema in her extremities (Exhibit C7F/31-32). Abdominal examination was within normal limits and there were no focal or neurological deficits (Exhibit 7F/31-32). The claimant was discharged after approximately three days (Exhibit C7F/33). As a follow-up appointment in October 2016, the record indicates that the claimant was not wearing her sensor regularly, and was experiencing lows in her blood sugar, which usually occurred after correcting highs (Exhibit C15F/41). Physical examination from this time indicates that the claimant walked with a normal gait and there was no edema in her extremities (Exhibit C15F/45). Abdominal examination was within normal limits, and there were no focal motor or sensory deficits observed (Exhibit C15F/45). In November 2016, physical examination remained generally unchanged (Exhibit C8F/7). At an orthopedic appointment from this time, treatment notes indicate the claimant complained of trouble with her hands, stiffness in her fingers, and occasional numbness (Exhibit C13F/2). On examination, the claimant was able to make a good fist and had good extension (Exhibit C13F/2). There was some stiffness in her fingers, but sensation to light touch was intact (Exhibit C13F/2).

Treatment notes from January 2017 indicate that the claimant's fasting glucose levels were high, and she was not checking her sugar or using her sensor regularly (Exhibit C15F/89). Physical examination was generally within normal limits, with a normal gait and normal abdominal examination noted (Exhibit C15F/92). A February 2017 eye examination continued to note that the claimant has mild diabetic retinopathy, but no macular edema (Exhibit 10F/4). At orthopedic examinations in April and May 2017, the claimant retained normal strength, normal range of motion, and normal stability in her shoulders, however impingement signs were positive bilaterally (Exhibit C13F/3 and 6). Physical examination in May and August 2017 were otherwise

normal including findings that the claimant walked with a normal gait, had no edema in her extremities, and had no focal motor or sensory deficits (Exhibit C15F/163 and 183). Orthopedic examination from October 2017 continued to show normal strength, range of motion, and stability in the claimant['s] shoulders, and impingement signs were positive only on the left side (Exhibit C13F/203). By March 2018, the record indicates that the claimant was wearing her monitor regularly (Exhibit C16F/2). Physical examination from this time remained unchanged (Exhibit C16F/6).

As for claimant's alleged mental impairments, the evidence of record does not support the severity of the claimant's alleged symptomology. The record indicates that the claimant has a history of mental health treatment, consisting mostly of outpatient couseling and medication management (Exhibit C14F). At an appointment in August 2016, the claimant reported doing better (Exhibit C14F/2). Mental status examination from this time indicates that the claimant's mood was anxious and cooperative and her affect was appropriate (Exhibit C14F/3). The claimant's memory was intact, and her attention and concentration were adequate (Exhibit C14F/3). Insight and judgment were good and the claimant denied suicidal ideations (Exhibit C14F/3). At a follow-up appointment in January 2017, the claimant's mood was euthymic and cooperative, and her affect was appropriate (Exhibit C14F/7-8). Insight and judgment were good (Exhibit C14F/7-8). In November 2017, the claimant reported being depressed, and noted she was facing increased stress due to her daughter's illness (Exhibit C14F/12). Mental status examination from this time notes that the claimant's mood was anxious and depressed, and her affect was constricted (Exhibit C14F/12). Memory remained intact, and attention and concentration remained adequate (Exhibit C14F/12). The claimant['s] insight was fair and judgment was good, and she continued to deny suicidal ideations (Exhibit C14F/12).

(Admin. Tr. 22-24; Doc. 11-2, pp. 23-25). At step two, the ALJ noted that "[t]he

claimant's alleged migraines are not well documented in the medical evidence and

the claimant did not discuss any persistent symptoms or limitations from migraines."
(Admin. Tr. 18; Doc. 11-2, p. 19).

In this case, Plaintiff's treating source assessed that Plaintiff would need a twenty-minute break every two hours to monitor her blood sugars; would be off task 25% of the time due to fluctuating blood sugars; and could be expected to be absent four days per month due to migraines and fluctuating blood sugar. There is no dispute that the record shows that Plaintiff has suffered from diabetes since childhood, and that in recent years her diabetes has been difficult to control. There is also some evidence in the record suggesting that Plaintiff's failure to routinely check her sugars may have contributed to her uncontrolled sugars. Plaintiff uses both an insulin pump and a continuous glucose monitor.

On January 17, 2017, a clinician noted that Plaintiff was not using her continuous glucose monitor because she didn't have sensors or transmitters. (Admin. Tr. 966; Doc. 11-8, p. 36). Plaintiff was advised that, until she is able to resume using her continuous glucose monitor, she should check her blood sugar at least four times per day. (Admin. Tr. 970; Doc. 11-8, p. 40). On March 6, 2018, treatment notes show that Plaintiff had resumed wearing her continuous glucose monitor since she stopped working due to hypoglycemia. (Admin. Tr. 1096; Doc. 11-21, p. 3). Despite wearing the device, she was having more lows. It appears that she was

recommended to manually check her blood sugar at least four times daily while also wearing her sensor. (Admin. Tr. 1100; Doc. 11-21, p. 7). Given the recommendation that Plaintiff check her blood sugar four times daily, there does appear to be some support for Dr. Stroka's assessment that Plaintiff would need a break every two hours. Although Dr. Stroka assessed that Plaintiff would need twenty minutes, Plaintiff testified that it took her about fifteen minutes to check her sugars. Furthermore, there was no discussion in the record of when Plaintiff would typically check her sugars or whether some or all of these breaks could be accommodated by the customary work schedule. The ALJ did not reconcile this evidence with his decision to discount Dr. Stroka's opinion that Plaintiff would need breaks throughout the workday. Thus, I find that the ALJ's conclusion that nothing supported Dr. Stroka's assessment that Plaintiff would need a break every two-hours is not supported by the record. Remand is required for further consideration of this aspect of Dr. Stroka's opinion.

There is also some support for Dr. Stroka's assessment that Plaintiff would be absent four or more times per month. During her administrative hearing, Plaintiff testified that she was fired by two employers because she was absent too many times. (Admin. Tr. 51, 64-65; Doc. 11-2, p. 52, 65-66). Plaintiff also explained that those absences were a result of being unable to get up in the morning. Plaintiff testified

that she cannot hear the alarm on her continuous glucose monitor while she is asleep, and that sometimes she is unable to rise without assistance in the morning because her sugar crashed. (Admin. Tr. 80; Doc. 11-2, p. 81). The ALJ did not reconcile this evidence with his decision to discount Dr. Stroka's opinion that Plaintiff would be absent. Thus, the ALJ's conclusion that nothing supported Dr. Stroka's attendance limitation is also not supported by the record. Remand is required for further consideration of this aspect of Dr. Stroka's opinion.

C.    PLAINTIFF'S REMAINING ARGUMENTS

Because I have found a clear basis for remand, I need not discuss Plaintiff's remaining arguments. To the extent any further error occurred, it may be remedied on remand after a new administrative hearing.

V.     CONCLUSION

IT IS ORDERED that Plaintiff's request for a new administrative hearing be

GRANTED as follows:

(1) The final decision of the Commissioner is VACATED.

(2) This case is REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment will be entered in favor of Maria Rosario.

(4) An appropriate Order shall issue.

Date:  August 3, 2020                          BY THE COURT

                                               *s/William I. Arbuckle*
                                               William I. Arbuckle
                                               U.S. Magistrate Judge